Case No. 21-5246, Ascension Borgess Hospital et al., Imbalance v. Rush Guffley Memorial Hospital, 20-CD-01957 et al. v. Xavier Becerra, Secretary of the United States Department of Health and Human Services, is to vote for the Imbalance, Ms. Lopez-Radiapoli, Xavier Becerra. Morning, Mr. Hogue. You may proceed when you're ready. Good morning, Your Honor. Drew Howe on behalf of the appellant hospital. May it please the Court. Congress expressly requires the Secretary adjust Medicare policy through rulemaking. That safeguard provides the public the opportunity to both understand and comment on potential changes in the law, but it also allows the public the opportunity to hold the agency accountable for deviations from the law. Unless Congress speaks clearly and convincingly to the contrary, courts have long presumed that Congress intended judicial review for such agency actions. Here, the hospitals allege that the Secretary violated that rulemaking requirement, but they've been denied the opportunity to pursue that administrative appeal on the basis of a preclusion provision. They ask this Court to decide whether that preclusion provision insulates the Secretary from this express rulemaking obligation under the Medicare Act. There was rulemaking. There was notice and comment rulemaking, including on the question whether the 2015 only partially audited forms could be the basis for the proportional allocation. So what is it? Your briefs refer again to audit protocols. Can you be more concrete about what is it that you believe should have been that wasn't subjected to notice and comment? Yes, Your Honor. Prior to the proposed rulemaking in May of 2019, in the fall of 2018, the Secretary issued a review protocol to the financial intermediaries that were to conduct these reviews of the S-10 worksheets. Those are the worksheets that the Secretary provided, or excuse me, that the hospitals provided to the agency to account for their uncompensated care. The hospitals had filled out those worksheets, providing what they had been told by the agency, they had been instructed by the agency, they were to put into those, the uncompensated care. That included any care they had provided to individuals under their charity care policies or their financial assistance policies. What occurred in the fall of 2018, when those were reviewed by the agency's fiscal intermediaries, for many of the hospitals received reviews or audits, as the government refers to those, they drastically cut that uncompensated care from the fiscal year 2015 cost reports. I don't think you've answered my question. I'm sorry. What is it that you believe should have been subjected to notice and comment rulemaking that was not? The review protocol, Your Honor. And what is the review protocol? You mean the audit procedures that were given to the intermediaries? The review protocol, yes, the review protocol that were given to the intermediaries that the agency was instructing the intermediaries what uncompensated care was. Because prior to that, the hospitals had been given instructions from the hospital on what uncompensated care was, which included all care they had provided under their charity care policies or their financial assistance policies. But when they provided those numbers, those numbers were changed on the S-10 worksheets. And I believe the government even acknowledged that in the proposed rulemaking that followed in May of 2019. At the appellant's brief on page 10, we quote the government's rulemaking in May of 2019, where the government acknowledged that the audited worksheets showed that for 10 percent of the audited hospitals, there was at least a $20 million difference between the fiscal year 2015. So it's the definition of uncompensated care? That's what should have been subjected to? We believe so, Your Honor. Again, it was the allegations. We were cut off very early in the administrative process. So we had alleged that these protocols, that the results of the reviews show that there was a disconnect between what the hospitals. I understand those facts and I understand how your clients are concerned about it. I'm just trying to focus on, I mean, my understanding from the government is that ordinarily audit methodology is not subjected to notice and comment rulemaking. And I assume that if it were, that you would have cited many cases about that. That's true, Your Honor. And the cases the government cites to about audit protocol not being normally subjected to notice and comment rulemaking are true. I think the distinction here in this case is we're not so sure that those cases are really applicable because in this case, we're alleging that policy was changed through the audits, not the audits. What policy? That the uncompensated care that the hospitals have been told they could report prior had had a different definition. The hospitals have been told they could report all of their uncompensated care. And then the government instructed the fiscal intermediaries to conduct these reviews that the changes on these S-10 worksheets reveal some change in policy at the agency level about what uncompensated care was, Your Honor. And that distinction, I think when you look, for example, the government cited to, I believe it's the Dirksen case. That's out of the Ninth Circuit at 1458 and 1459 in the Dirksen case. That case stands for the principle that audit protocol are not normally reviewable and not normally subject to challenges, procedural challenges. But there, the Ninth Circuit commented on the fact that the claims processing rules that were trying to be subjected to notice and comment didn't change the public's understanding of what the law was. They didn't create any new categories of claims or services that could be submitted to the government. We have alleged here that what has happened is that the change underlying these reviews was a change in what uncompensated care could be claimed on the cost reports, Your Honors. So the claim is not, the briefing sometimes refers to the hospital's perception that it's unfair that only certain hospitals' data was audited and certain other hospitals' data wasn't. That is not the locus of your challenge. No, Your Honor, it is not. Because that decision was subjected to notice and comment. That's correct, Your Honor. It was. I think at the administrative level, that was certainly part of the larger claim. But on appeal is specifically the issue about the notice and comment challenge we've watched against the policy change we've alleged regarding the protocol that were before. We think that's really important. And what has changed in this court's prior case law on this is the express rulemaking. When you say, I mean, you're saying the words that all sound good, but I have the same question to Judge Pilgrim. What exact policy is it that you think was created or changed that should have been made subject to notice and comment rulemaking? Was uncompensated care, which uncompensated care could be covered? That's what you think was changed? Yes, Your Honor. Your Honor, prior to the reviews, the hospitals were allowed to claim all of, they understood that all of the care in their charity care policies and their financial assistance policies was an allowable cost reportable on their cost reports. And after these reviews, we believe the protocol, because of the differences in the numbers on the S10 worksheets that the government audited, that adjusted that. That's, we believe, an indication of a change in policy at the level. This should be subjected to the merits claim that we have before the board. Is it the case that the individual audit for an individual hospital, the hospital has the ability to appeal that? But not in this case, Your Honor. The government's position is specifically because of these individual, these reconciliation reviews. Not for purposes of its use in the numerator or under the statute, but don't the worksheets have other functions for the hospitals? And that's why they were available. And so to the extent that there's audits that affect them for their immediate purposes, is there no appeal available to say this was misaudited or, you know, what are you finding here? I think there was an appeal there. I want to be sure I'm clear with my words. With the worksheets, my understanding is the S10 worksheets were used specifically for this purpose, for the purpose of estimating, in this case, the uncompensated care. But if Your Honor is referencing the cost reports and whether or not the cost reports are generally something that can be subjected to administrative review, the general answer to that question, Your Honor, is yes, they can. The agency issues notices of program reimbursement. It's a reconciliation process. Normally providers can engage in an administrative appeal of that reconciliation process. In fact, many of the appellants here tried to do so. But the administrative board responded to that by saying it lacked the jurisdiction to go through that because the cost reports issued, the fiscal year 2015 cost reports, had been reviewed and the notice of program reimbursement had only been issued for purposes of the Secretary's proposed rulemaking under the Factor III adjustment. So in this case, Your Honor, I don't want to speak for the government, but my understanding from the board level was that they dismissed those for lack of jurisdiction under this preclusion provision. I'm not sure I entirely follow, but are you saying the audits were performed only for purposes of Factor III, not for purposes of the underlying function of worksheets S10? I believe that's the government's position, that they audited these worksheets, the S10 worksheets, for the purposes of this rulemaking. And I think what makes this case different from the cases this court has previously had before it is the Supreme Court's decision in the lineup, which specifically applied the Medicare Act's overarching requirement for express rulemaking. In fact, in the context of this program, the disproportionate share hospital program. And that matters here because what this court said in a different case, in the ACLA case, was that when a statute has an express rulemaking requirement, that might shift the balance in the test that this court applies to decide what congressional intent was to enforce the strong presumption of judicial review. And here we have the reinforcement of Section 1395 HHA2 under the Medicare Act. That's an express rule requirement. This is an express rulemaking requirement. And there's no language in the preclusion provision issue, Your Honors, that strips away that rulemaking requirement from the Secretary. It's very specific about what is precluded, the estimates and the time periods. And I think it's also important to reflect on the fact that this court or the other statutes in the Medicare Act that Congress has provided its clear intent of judicial stripping. I'm sorry, stripping of judicial review by also not only targeting the unreviewable action, but also targeting the process itself. I think we understand all that. And as a general matter, you're correct. If you have a right to rulemaking, you have a right to rulemaking. The question is, you've got to have a policy to which you're pointing and saying to the court, that policy was adopted without rulemaking. I mean, the Yale New Haven Hospital analysis is, in my view, largely on point with respect to this. But you've got to show a policy with respect to which you think it was an adoption of that policy. It's in place. LANL covers it. And we didn't get a chance to look at it through notice and comment. I think what we're struggling with is what is the policy? You say protocols, but protocols with respect to what? In your honor, one of the difficulties in this case, I think it's also it's different from Yale New Haven is because of the early stages in which we were cut off at the administrative level. We weren't able to fully develop a record on appeal. It was quite literally cut off. No, no, no. Let me tell you the way at least. It's like me would look at this. It's not a hard thing to see that there's a policy there that's covered by the law. And then ask whether that opted by notice and comment rulemaking. I'm trying to find the policy to which you're pointing. I don't care whether you were cut off early. That's beside the point. You have to show us the policy that you're concerned about that was adopted. And and then say there was never notice and comment on this policy. We know we can't get to the merits behind this, but we're entitled to notice. And what's the policy that you're fighting about? I said my rebuttal time, if I could also continue to answer your question. I think here. Again, my understanding is prior to this, the instructions of the agency had provided to hospitals on what they could claim on their cost reports. What uncompensated care was was a broader was a broader definition than what they provided in their protocol. We think in their protocol. How can you only be at a rethink stage? Why couldn't you? How can you only be at a rethink stage? Why wouldn't you know that? What was what the hospitals were told previously and what they were told now? Because we only have what the hospitals were provided previously and the government will not provide its protocol. We don't have the protocol. We can't look at the protocol and the rulemaking. You don't know what the hospitals were told? No, no. We know what the hospitals were told. Well, if you know what they were told before and you know what they were told this time, it seems to me you would be able to discern whether or not there's a difference. But I maybe I can help. It sounds like what you're saying is the hospitals were provided guidance on what counts as uncompensated care. And they filled out the worksheet as 10 accordingly. And your supposition based on the results of the audits is that the intermediaries were told something else about what counts as uncompensated care. That's correct. I have to say that is not an argument that I gleaned from your briefs and not want. That's why I'm struggling with my questions because we're trying to figure out precisely what it is you're going after. So it's really, if I understand you correctly, it's the definition of uncompensated care. Is that right? Your Honor, I see I'm out of time. We believe so. Yes, Your Honor. And CMS transmittals were provided to hospitals before these. The instructions provided what uncompensated care could be included on the cost reports. But you're right. That's outside of the record in this case. Well, I want to be clear about one other thing. There are a number of factors that the Secretary is to take into account. And the fact that the hospitals received instructions to submit very broad reports doesn't necessarily mean that if an audit were performed and indeed it was determined that all of the care reported was actually provided. To the eligible class. That doesn't necessarily mean the hospitals are going to get 100% compensation. I mean, that's been clear throughout, hasn't it? So the fact that there's a difference between what the hospitals reported, according to instructions, and what the intermediary said was appropriate. In this case, could be two different things based on other factors that have to be taken into account. That's why it's so difficult to understand what we would be saying in accepting your argument. And I think that's why, at least my understanding of why the panel is pressing you so on this. Yes, Your Honor. I think that what we're seeking is only the ability to go before the board and impress that case. What case? The merits of the case. I think Judge Rogers outlined that the government may have a different idea of why the numbers are different. That it wasn't a change in policy and that it was a different reconciliation process that they were going through. That is a possibility for the board, but we didn't have the opportunity to do that, Your Honor. Now you're saying this is a merits claim as opposed to a procedural noted failure of notice and due process claim? No, Your Honor. Right. Okay. I don't know how else to ask it. My colleague, Judge Bill, tried to boost up my question. Bill's trying to figure out what the policy is you're trying to get at. And then Judge Rogers said, well, you know, the results look iffy to you, but that doesn't tell me, when I'm looking at it, what policy is it that he thinks gave rise to these iffy results? Iffy in your terms. Great. Any questions, colleagues? No. We'll give you some time for rebuttal. Thank you, Your Honor. Good morning, Ms. Lopez. Good morning. We'll hear you more clearly if it's at the right level, so don't rush. May it please the Court, Caroline Lopez on behalf of the Secretary. I think it might be helpful to just sort of take a step back to look at the overarching review bar, which has been interpreted by this Court in two cases, in Florida Health and in DCH. And there, this Court made very clear that any challenge that goes to the estimate, the Secretary's estimate, falls clearly within the heart of the review bar. And so, for example, in Florida Health, it goes to the data that underlies the estimate. And in DCH, which did come out after this Court's case in Alina, of course, which is the same as the Supreme Court's case in relevant parts, this Court held that it also barred challenges to general rulemaking challenges to the methodology that underlay the estimate. And that's actually exactly what's happening here. Well, just go with us for a moment. You know, we have Alina also saying notice and comment rulemaking, you know, is not challenges to failure to provide it are not necessarily barred. We have the Yale New Haven case, which describes a distinction between a claim that's going after the substance of the estimate and a claim that's saying you have to fulfill the notice and comment rulemaking obligation. So if we were to make that distinction, how would you respond? No, Your Honor, I would definitely disagree with that. With what? So first of all, on a couple of points. So first, Alina had to do, Alina was decided before this Court's, sorry, Alina was decided before Congress set up this entirely new methodology, which Congress both said is, so it used to be that payments were sort of this retrospective thing that looked at the hospital's actual number, no sort of estimate in the same way that it's done here. And so Alina was about sort of the merits question of whether in that system, notice and comment was required. Here we have something totally different. Congress set up a new dish payment system, which Congress says the secretary has to do this estimate on this really time compacted frame. The estimate is interdependent with one hospital's share altering the other hospital's share. And at the same time, Congress said there will be no review, no administrative or judicial review that challenges any estimate the secretary makes. And so that doesn't mean that the secretary doesn't have to do notice and comment rulemaking. In fact, it's undisputed that the secretary did do notice and comment rulemaking on exactly this question when deciding whether or not this was the most appropriate data. And so there were comments that said both the audit was unfair because you only selected some hospitals. There were also comments that said the audit was unfair because we think that the results sort of varied so much that the protocols must not have been right. And the secretary in establishing the estimate said, we disagree with those comments. We think that the audits actually made this data more accurate. And that's why we're picking this data as the estimate. And we know that it's not really that they're sort of, and this is in their own words, in both the complaint and in the brief, that they're not concerned about something happening in a vacuum. What they're concerned about is they don't like their audit results. And they don't like the fact that the secretary chose those audit results as a basis for the estimate. Now, what they're saying is the intermediary, they're alleging the intermediary did something different than the intermediary previously had done. Change in policy, and they are titled to notice and comment rulemaking. I have to be very clear with you. I don't accept your argument on notice and comment rulemaking to the extent that it's inconsistent with Yale New Haven. If a regulated party has a right to notice and comment rulemaking, they have that right. That's separate from the merits of the claim. And you're right. You have a big argument on preclusion with respect to the merits. That's not what their brief is arguing. That brief is very clear in saying we were denied notice and comment rulemaking. I still am trying to understand with respect to what. So, two things, Your Honor. First, I agree with you that I'm a little bit confused as to with respect to what. And that, as we've been discussing today, they got full notice and comment rulemaking on the issue of what the estimate would be, including whether or not to use these audit protocols. And is the definition that was given to the hospitals, is it different from the definition that was given to the intermediaries? So, I cannot say anything, again, because these audit protocols are confidential. But it is HHS's position that the audit protocols are completely consistent with the instructions given to folks. But also, more broadly. The audit only is for purposes of factor three. These are not auditing because the worksheets originate for a different purpose. So, thank you very much for the question, Your Honor. So, this is part of the general cost reports that folks have to turn in. And they are used for, they were used in this case for factor three. And that is something that the Secretary said. We think this new, so that this sort of new worksheet came into being around the same time that there was the dish payment change. So, it could be used for other purposes. But the Secretary has always said we think this would be a very useful data set for the agencies. And I do want to emphasize that I think one thing, one case that's helpful also is the Clarion case that we talked about in our brief. And so, the Clarion case says that where there are certain instructions to sort of the Medicare intermediaries, they don't actually change the substantive entitlement to payment. Those aren't the type of thing that even fall within the notice and comment requirement under a line. And that's exactly what we have here. Because at the moment. Why is that? Because they're not a rule? No, Your Honor. Because the Secretary could have chosen a different. So, at the moment that the audits happen, there's actually no change to the legal entitlement to payment. At that moment, the Secretary could have said, you know what, I actually don't like the audit results. I'm going to use as a basis for the estimate for this dish payment some other data source. So, the actual decision as to what the basis for the payments would be is in the rulemaking. Is in the what? It is in the rulemaking that set the 2020 dish payments, not in those sort of prior audit procedures. Because it's the Secretary's selection of that data as the most appropriate data that makes them eligible for payment on that basis. And I take it that the choice of the 2015 allocation is not just for 2020, that CMS plans to use that going forward. One small tweak to that. Yes, Your Honor, they do plan to use that worksheet S10 data and have continued to do audits. But each year they select a new tranche of data. And my understanding is that they've currently moved on to more recent. So, they're not going to use the 2015? That's right. Because in the past, they picked a year that they used multiple times. They gathered the data and they continued to assume that the proportionate share for each hospital was unchanged year to year. And they're not doing that anymore? No. So, they do sometimes use a year sort of more than once. But my understanding is that they're no longer using the 2015. I believe it's 2017. It might be later. And part of that is because, again, this was a new data source. It was a new type of worksheet back in 2013. And the Secretary said from that very first rulemaking, we think this is going to be a great data source. Once hospitals have had a chance to become more familiar with how to submit things, we've given them lots of opportunities to resubmit. And we've got to figure out how to, you know, and usually data is audited. And so, we've got to pull that into the system. And then once that got up and running, they've sort of become more efficient at doing that. And so, we've moved on to more updated years. Are you asserting that there was no change in what compensated care could be covered? Your Honor, I'm not. I mean, that wasn't the focus of their brief. I'm not sure I entirely understand. And so, I just want to be forthright that I don't entirely understand their point today. But HHS's position is that the audit protocols are consistent with the instructions given to the providers. But also, that that's a merits question. The conclusion of review bar absolutely bars those types of merit questions. Whereas in plaintiff's briefs, they quite candidly say the problem with these audit results is that they tainted, the use of them tainted the dish payments, that they were a component of the dish payments. And so, they really are, they're under this court's functional analysis. And again, DCH is a rulemaking. DCH was a rulemaking challenge too. And DCH, they said it was a slightly different rulemaking challenge. But DCH was a rulemaking challenge that said, we as the hospital, we as the hospitals don't like the merger rule. We submitted comments about that merger rule. And we think that the secretary acted arbitrarily and capriciously in not adequately responding to those. And this court said that those are out under the review provision. But just to clarify, and it was helpful, your answer saying that they don't plan to reuse the 2015 audited data as the, in factor three. But imagine that HHS did plan to use it again. And imagine that the hospitals came and said, you know, we're taking whatever you decided based on the estimate for 2020. But because you're going to use this again, we want prospectively to make sure that the uncompensated care, which affects what we get at the end of the day, was subjected to noticing comment. Would your position be that the preclusion provision bars that claim? Yes, because the preclusion of review provision bars litigation in the first instance. So in this court's prior decisions, drawing distinctions like that, the court has always, so in American Clinical One, this court first held that what was actually an issue in that case was independence of the agency action shielded from review. And it's only after having made that first decision that the court then looks to the type of relief. And in that case, the court said, yes, prospective relief. But actually, the one thing we definitely know is no retroactive relief. But it did have to make that finding first. And here, we don't think that there is a way to untangle it in that way. What we're talking about is the secretary's choice of appropriate data, which is Florida Health. And what we're talking about is the secretary's methodology of ensuring accuracy of that data, which is through the use of audit protocols that are confidential as all audit protocols. How is it a challenge to her estimate if there's no estimate even extant yet? I mean, that's what my hypothetical is trying to separate, is that there's no calculation of any amount. It's just the rule that's going to go. It's just what is the ‑‑ I think it's that what the way that this court's functional analysis has worked is that you ask whether the type of agency action, so here the type of agency action is can you use audit results where the audit protocols haven't been published, which, again, is a very normal enforcement tool to not publish the sort of secret sauce of exactly how the audit works, because then you can have circumvention. And so that type of prospective relief would be saying it's invalid for the secretary to choose this type of data as the basis for their estimate. That's not the nature of their claim. The nature of their claim is whatever overarching rules or protocols you're following, we're entitled to see in notice and comment rulemaking. They're not contesting, man. I agree with you. Preclusion blocks that. You're wiping away Alino, and Alino's big. I mean, it says it's not just rules. It's all kinds of policies in there. It easily fits there if I can figure out what the policy is that they're concerned about. But for you to say because the rule that they want to see or know that you're following will later be used to get results that they can't see, doesn't mean they're not entitled to notice and comment rulemaking on the rule. No, Your Honor. Just briefly, to go back to Clarion, as far as I understand it, as they're arguing it today, they are saying that something happened at these audits that they didn't like. And at the moment that the audit actually happens, there's no change to their legal entitlement to payment. And when there's no change to their legal entitlement to payment, Alino doesn't apply in the first place. No. See, I just disagree on what you think they're saying. They're not saying you followed something that was different than you previously did. The results may or may not be good, but we're entitled to know what it was you followed, and that's subject to notice and comment rulemaking. They may not be right, but you're overstating what their position. They are not. I read the brief again just before the case. They are not saying we're entitled to challenge the merits of what you did. They are saying we're entitled to know the protocols that you followed. That's all. No, Your Honor. So, first of all, as we explained in our brief, that would be highly irregular to force an agency to make public their audit protocols. Say that again. Highly irregular to force an agency to make public their audit protocols. And they knew that. So, essentially what they're doing is forcing the agency to no longer use audits on the data, and that is the best methodology that the agency has found to ensure data accuracy as part of this estimate. And, again, sort of the tenor of they're not actually injured at the time that the audit happens. So, a lot of audits, a lot of Medicare audits, they happen after payments have been made, and so they are actually asking for the payments back. Those are really different than these types of audits where nothing happens to them until the secretary says, I actually think that this is the most appropriate data. I see that I'm above my time, but if there are further questions, I'm happy to answer them. Judge Rogers? No, thank you. Do these audit protocols go through internal government review, OMB, or OIRA or anything? I apologize, Your Honor. I don't know, and I don't want to make any misrepresentation on exactly how the audit protocols are rated. Great. Thank you very much. Council had used up time, but we had used up some of it. So, as I told you, we would give you some extra time. We'll give you two minutes for rebuttal. First, I think the use of the word audit just changes the character of what we've alleged. What we've alleged is that the rules were changed in the course of this. So, if the government is saying it has the right to have rule changes, requirement changes, or policy changes to the substantive requirements into its audits and thus make them protected from a lineup and make them protected from HH2's rulemaking requirement, I think that's a real stretch. I hear you, but I also have to say, to be fair, I did not understand that to be your claim before you stood up here today. Is there anywhere you would point us to in your briefing where you made clear the nature of your challenge? You've just articulated it in a much more useful way, but I had a really hard time understanding what you meant by audit protocol. Right. And it's not going to be possible for us to reach that claim unless it's been presented. Fair enough, Your Honor. The difficulty that we have faced, I think you've heard, is we face the problem of not being able to reach the merits of these claims at the early stage of being dismissed on jurisdiction. So, in paragraph four of our complaint before the lower court, we mentioned that we are specifically targeting the policies of the review protocol. I believe that's on JA28, paragraph four. And we allege that the failure of the policy to go through notice and comment rulemaking is a failure under HHA24. We don't get into the definition of uncompensated care in that paragraph. Or anywhere. I'm sorry? Or anywhere specifically. That's correct, Your Honor. It's outside the joint appendix. It's outside the record because we simply couldn't get into the balance. I think one of the other concerns we have about what's happened here for the providers, I see I'm out of time. Thank you.
judges: Pillard, Edwards, Rogers